Marvin MACKEY, Lillian Mackey, husband and wife, Plaintiffs–Appellants,

v.

PIONEER NATIONAL BANK, a national banking corporation; Paul Campbell, Marie Campbell, husband and wife, Defendants–Appellees.

Nos. 87–3810, 87–3818.

United States Court of Appeals, Ninth Circuit.

Argued April 7, 1988.

Resubmitted June 10, 1988.

Decided Jan. 31, 1989.

---

David H. Putney, Putney Law Offices, Yakima, Wash., for plaintiffs-appellants.

Gary E. Lofland, Lofland & Associates, Yakima, Wash., for defendants-appellees.

Before BEEZER, HALL and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Marvin Mackey ("Mackey") appeals summary judgment for Pioneer National Bank ("Pioneer") in an action for breach of employment contract, negligent misrepresentation, and interference with business relationship, arising from his being forced to resign as Executive Vice President of Pioneer. Mackey claims that the district court abused its discretion in limiting discovery and erred in ruling that the National Bank Act, 12 U.S.C. § 24 (Fifth) (1982), offered a complete defense to both his contract and tort claims. Pioneer cross appeals, claiming that the district court erred in failing to assess Rule 11 sanctions against Mackey. We affirm.

BACKGROUND

Pioneer National Bank is a national banking corporation organized under the National Bank Act of 1864. 12 U.S.C. § 21 (1982). Paul Campbell is its President and Chief Executive Officer. Marvin Mackey was hired as Senior Vice President on June 1, 1985, and became Executive Vice President on November 14, 1985. In a letter to Mackey, dated May 20, 1985, Campbell wrote "Just as the rest of us, you will be subject [to] all of the policies and procedures, rules and regulations of the bank now in force and hereafter passed." Mackey was also given a personnel manual which stated that:

> In order to preserve the greatest freedom of association, however, employment and compensation can be terminated with or without cause and with or without notice at any time, at the option of either Pioneer National Bank or the staff member. No bank representative has authority to enter into any agreement for employment for a specific period of time or make any agreement contrary to the foregoing.

In July 1986 Mackey was accused of sexual harassment by a female employee of the bank. Pioneer's investigation led to a resolution of that complaint and resulted in a disciplinary letter being written to Mackey. In mid-July 1986 Mackey made disparaging remarks about Pioneer's President to the bank's outside auditors. Once this became known, the Executive Committee of the Board of Directors ordered Mackey's termination. The Executive Committee acted unanimously to fire Mackey. The full Board of Directors ratified the Executive Committee's action on August 14, 1986. CR 31, Exh. B, 1. Mackey later chose to resign.

Section 3.3 of Pioneer's by-laws provided that "[t]he Board of Directors may appoint,

from time to time, from its own members, other committees of one or more persons, for such purposes and such powers as the Board may determine." On May 8, 1986, the full Board of Directors passed a resolution creating an executive committee, consisting of the Chairman of the Board, the Vice Chairman, and the President of the bank. Certain functions were excluded from the mandate of the Executive Committee, but the termination of officers or employees was not one of these. Mackey attended the board meeting which created the Executive Committee.

Mackey filed his action in Yakima County Superior Court on November 4, 1986. Counsel for Pioneer had earlier informed Mackey and his counsel that any claims for wrongful discharge were preempted by the National Bank Act and that they would pursue sanctions if an action was initiated. The action was removed to federal court on November 24, 1986. Pioneer filed for summary judgment and Mackey responded by requesting additional time to engage in discovery. The district court granted this request. The court allowed Mackey to discover "whether the Board of Pioneer National Bank knew and approved of [his] termination." The court ordered that discovery be completed before February 1, 1987. The matter was reheard on March 2, 1987. Summary judgment was granted to Pioneer and the order was entered on March 31, 1987. Mackey timely appealed on April 17, 1987. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1982).

DISCUSSION

A. *Jurisdiction*

■ We must first decide whether the district court had jurisdiction in this matter. Pioneer removed this action from state court based on the federal claim raised by Mackey in his complaint under the group health plan provisions of the 1986 Comprehensive Omnibus Budget Reconciliation Act ("COBRA"), Pub.L. No. 99–272, tit. X, 100 Stat. 227 (1986) (codified at 29 U.S.C. §§ 1161–1168 (Supp.IV 1986)). After removal, and before summary judgment on Mackey's contract and tort claims, this cause of action was dismissed. Yet the ultimate lack of merit of the federal

claim does not mean that the claim was insubstantial for purposes of conferring jurisdiction. 13B C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3564, at 73 (2d ed. 1984). We find that the COBRA claim was not "absolutely devoid of merit" or "obviously frivolous," so as to have denied the district court jurisdiction. *Hagans v. Lavine,* 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974) (citations omitted).

It was not then an abuse of discretion for the district court to entertain Mackey's pendent state claims in contract and tort. *See McCarthy v. Mayo,* 827 F.2d 1310, 1317 (9th Cir.1987). These causes of action unquestionably arose from a "common nucleus of operative fact," *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), that is, Mackey's termination. These claims would, "without regard to their federal or state character," be expected to be tried in "one judicial proceeding...." *Id.* We conclude, on the facts of this case, that retention of jurisdiction well served the purposes of judicial economy and efficiency. *See Hagans,* 415 U.S. at 536–37, 94 S.Ct. at 1378–79. The district court properly had jurisdiction over the claims before us on appeal.

B. *Premature Summary Judgment*

■ Mackey claims that summary judgment was premature because he had insufficient time to conduct discovery concerning the actions of Pioneer's Executive Committee and Board of Directors. We review for an abuse of discretion a district court's refusal to permit further discovery before ruling on a summary judgment motion. *Landmark Dev. Corp. v. Chambers Corp.,* 752 F.2d 369, 373 (9th Cir.1985); *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 954 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

■ The district court granted one extension to Mackey to conduct his discovery. It imposed, however, a deadline of February 1, 1987. Under Fed.R.Civ.P. 56(f), the district court may refuse to grant the party's application for summary judgment if the opposing party needs time to discover central facts. Rule 56(f) requires affida-

vits setting forth particular facts expected from the movant's discovery. *Brae Transp., Inc. v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir.1986). A Rule 56(f) motion must show how additional discovery would preclude summary judgment and why a party cannot immediately provide "specific facts" demonstrating a genuine issue of material fact. Fed.R.Civ.P. 56(e), (f).

Mackey failed to avail himself of Rule 56(f). Mackey had been granted an additional month to conduct the limited discovery authorized by the court. A movant cannot complain if it fails diligently to pursue discovery before summary judgment. *Brae,* 790 F.2d at 1443; *Frederick S. Wyle P.C. v. Texaco, Inc.,* 764 F.2d 604, 612 (9th Cir.1985). It was not an abuse of discretion for the district court to proceed to summary judgment in this case.

### C. *National Bank Act Defense*

#### 1. Issues Raised First Time on Appeal

Pioneer argues that Mackey failed to raise before the district court issues involving construction of the Pioneer board's by-laws and whether the board could have dismissed Mackey at pleasure if he had not been hired by the board. The general rule is that an issue will not be considered for the first time on appeal unless a party shows exceptional circumstances why the issue was not raised below. *Taylor v. Sentry Life Ins. Co.,* 729 F.2d 652, 655–56 (9th Cir.1984).

It is clear, however, that Mackey presented these issues to the district court in oral argument. Whether the National Bank Act is a defense to Mackey's contract and tort claims is an issue squarely before this court.

#### 2. The Defense

A district court's grant of a motion for summary judgment is reviewed by the appellate court de novo. The general standard an appellate court applies in reviewing the grant of such a motion is the same as that applied by the district court initially

under Fed.R.Civ.P. 56(c). *Allen v. A.H. Robins Co., Inc.,* 752 F.2d 1365, 1368 (9th Cir.1985). Rule 56(c) states that summary judgment is proper when the pleadings and discovery, read in the light most favorable to the non-moving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

■■■] The National Bank Act provides that a national banking association will have the power "[t]o elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places." 12 U.S.C. § 24 (Fifth) (1982). This provision has been consistently interpreted to mean that the board of directors of a national bank may dismiss an officer without liability for breach of the agreement to employ. *See, e.g., Rankin v. Tygard,* 198 F. 795, 798–99 (8th Cir.1912); *Kozlowsky v. Westminster Nat'l Bank,* 6 Cal.App.3d 593, 596–97, 86 Cal.Rptr. 52, 54 (1970); *Copeland v. Melrose Nat'l Bank of New York,* 229 A.D. 311, 312, 241 N.Y.S. 429, 430 (App.Div.), *aff'd,* 254 N.Y. 632, 173 N.E. 898 (1930); *Van Slyke v. Metropolitan Nat'l Bank,* 155 Minn. 319, 193 N.W. 470, 471 (1923); 7 *Michie on Banks and Banking* ch. 15, § 127, at 97 (1980 & Supp. 1987). An agreement which attempts to circumvent the complete discretion of a national bank's board of directors to terminate an officer at will is void as against public policy. *McGeehan v. Bank of N.H.,* 123 N.H. 83, 455 A.2d 1054, 1055 (1983) (per curiam); *Kemper v. First Nat'l Bank in Newton,* 94 Ill.App.3d 169, 49 Ill.Dec. 799, 801, 418 N.E.2d 819, 821 (1981); *Copeland,* 229 A.D. at 312, 241 N.Y.S. at 430.

Mackey does not dispute the fact that the bank could terminate him at will.[1] He questions, however, whether the bank discharged him in a manner established by the National Bank Act. Specifically, he claims that (1) since he was not an officer hired by the board, he could not be fired at will by

---

1. Nor is it disputed that Mackey's resignation, after a threat of termination, amounts to a constructive firing.

the board, and (2) even if he could be fired by the board, the action of the executive committee was insufficient for that purpose. These arguments are unavailing.

■ First, it is clear that Mackey's position as Executive Vice President is an "officer" as described by the National Bank Act and, indeed, the position of vice president is also specified in the Act. 12 U.S.C. § 24 (Fifth) (1982). Other cases where this provision of the Act was interpreted involved persons holding comparable positions. *See Rohde v. First Deposit Nat'l Bank,* 127 N.H. 107, 497 A.2d 1214, 1215 (1985) (vice president); *McGeehan,* 123 N.H. at 84, 455 A.2d. at 1054 (executive vice president); *Copeland,* 229 A.D. at 311, 241 N.Y.S. at 429 (vice president). Although one case, *Wiskotoni v. Michigan Nat'l Bank–West,* 716 F.2d 378, 387 (6th Cir.1983), held that a branch manager was not an "officer" within the meaning of Section 24 (Fifth), the distinction turned on whether an officer was appointed by the bank's board of directors. *See also Mahoney v. Crocker Nat'l Bank,* 571 F.Supp. 287, 290–91 (N.D. Cal.1983); *McWhorter v. First Interstate Bank of Or.,* 67 Or.App. 435, 678 P.2d 766, 768, *cert. denied,* 297 Or. 272, 683 P.2d 92 (1984). Nevertheless, Pioneer's by-laws specify that the board of directors may appoint "one or more vice-presidents." At the same time Bylaw 4.2 delegates the Board's authority to hire vice presidents to President Campbell. *Wiskotoni* requires only that the board hire bank officers either directly or indirectly through delegation. 716 F.2d at 387. Mackey was an officer hired indirectly by the Board of Directors and thus could be terminated at will.[2]

■ Next, Mackey claims that the Executive Committee's action firing him was insufficient for the purposes of the National Bank Act. In order for Section 24 (Fifth) to be used as a defense, the termination must have been made by a bank board of directors. *Mahoney,* 571 F.Supp. at 290. Nevertheless, it has been recog-

nized that a national bank's board of directors may assign the performance of their duties to an executive committee. *See* 12 C.F.R. § 7.4425 (1987). Pioneer had done this through its board resolution of May 8, 1986. The Executive Committee later decided unanimously to terminate Mackey, and the full Board of Directors subsequently ratified that decision. CR 31, Exh. B, 1. Unlike the situation in *McWhorter,* 67 Or.App. at 439, 678 P.2d at 768–69, there is no question that Mackey's firing was accomplished by the Board of Directors, acting through its Executive Committee, ER 34, and not by the individual action of Pioneer's President. *See also McWhorter v. First Interstate Bank of Oregon,* 81 Or.App. 132, 135, 724 P.2d 877, 879 (1986) (later appeal in same case, where court held that bank failed to prove that power to fire officers had been delegated to president).

■ Since Mackey was both hired and fired by Pioneer's Board of Directors, the district court was justified in ruling that the National Bank Act raised a defense to both his contract and tort claims. Mackey argues, however, that while his contract claim would be subject to dismissal upon a finding that he served at the pleasure of the board, his tort claims would not be. The only case that supports Mackey's position, that a distinction is to be made between tort and contract claims under the National Bank Act, is *Rohde v. First Deposit National Bank,* 127 N.H. 107, 497 A.2d 1214 (1985). In that case, the New Hampshire Supreme Court ruled that "[i]t does not necessarily follow, however, that because national banks are immune from liability for breach of officer employment contracts, they or their officers are also immune from tort claims arising out of their conduct during the negotiation of such contracts under theories of inducement or detrimental reliance." *Id.* at 109, 497 A.2d at 1216. Unfortunately, the New Hampshire Supreme Court did not cite any authority for this proposition, one that

---

**2.** We note incidentally that while the record does not provide affirmative support for concluding that the board ratified Mackey's hiring, it can be inferred from his two-year service as Vice President, and later as Executive Vice Pres-

ident, that he was confirmed in these positions. Other such appointments were routinely confirmed, CR 21, Exh. D, 1, and undoubtedly so was Mackey's.

seems squarely to contradict other case law. *E.g., Kemper*, 94 Ill.App.3d at 170–71, 49 Ill.Dec. at 800–01, 418 N.E.2d at 820–21; *Kozlowsky*, 6 Cal.App.3d at 599–600, 86 Cal.Rptr. at 55–56 (where the court found a cause of action for interference with contractual relation against a national bank board member who acted *without* board authority).

Moreover, it would make little sense to allow state tort claims to proceed, where a former bank officer's contract claims are barred by Section 24 (Fifth). The effect would be to substitute tort for contract claims, thus subjecting the national bank to all the dangers attendant to dismissing an officer. The purpose of the provision in the National Bank Act was to give those institutions the greatest latitude possible to hire and fire their chief operating officers, in order to maintain the public trust. *See Copeland*, 229 A.D. at 312, 241 N.Y.S. at 430 ("The intent of the statute was to place the fullest responsibility upon the directors by giving them the right to discharge such officers at pleasure.... It is idle to say that the statute merely gives the power to discharge the official, without the right to do so. The grant of the power carries with it the untrammeled right to its exercise, free from penalty."); *Mahoney*, 571 F.Supp. at 289 (citing *Kozlowsky*, 6 Cal. App.3d at 596, 86 Cal.Rptr. at 54; and *Kemper v. Worcester*, 106 Ill.App.3d 121, 62 Ill.Dec. 29, 31, 435 N.E.2d 827, 829 (1982) (allowing an action for tortious interference only upon showing that director acted without board authority in firing officer)). The district court was correct in granting summary judgment based on the defense offered by the National Bank Act.

### D. *Rule 11 Sanctions Against Mackey*

The only issue raised by Pioneer's cross-appeal is whether the district court erred in denying sanctions against Mackey, pursuant to Fed.R.Civ.P. 11. We review the factual determinations of the district court relating to a Rule 11 sanction motion under a clearly erroneous standard. If a party disputes the district court's conclusion that the facts constitute a violation of the rule, we review that legal conclusion de novo. Finally, if the appropriateness of the sanction imposed is challenged, we review the sanction under an abuse of discretion standard. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 828 (9th Cir.1986). Absent any findings by the district court, we would review a denial of Rule 11 sanctions under an abuse of discretion standard.

Pioneer claims that Mackey's complaint filed in state court did not satisfy the objective good faith standard of a reasonable inquiry of fact and law required by Rule 11. *Zaldivar*, 780 F.2d at 829; Fed.R. Civ.P. 11 advisory committee notes. Pioneer admits that the filing in state court may not be subject to Rule 11 sanctions, *see Hurd v. Ralphs Grocery Co.*, 824 F.2d 806, 808 (9th Cir.1987), but urges us to consider that filing nonetheless. Pioneer also points to the letter sent by their counsel to Mackey's attorney on September 17, 1986, which cited authority for the proposition that Mackey's claim was barred by the National Bank Act.

Both Mackey's contract and tort claims had some basis in fact or law. Although it was clear that the National Bank Act preempted his contract claim, this would have been the case only if, as noted above, Pioneer's Board of Directors had acted to both hire and fire Mackey. This was the subject of discovery. And although Mackey was unable to unearth any inconsistency in the bank's argument that the Executive Committee undertook action for the Board of Directors, at the time of filing the action this was a legitimate question of fact. As for his tort claims, Mackey could have reasonably relied on the one decision, *Rohde*, that seemed to make a distinction between tort and contract claims for purposes of the National Bank Act. Pioneer actually cited *Rohde* to Mackey's lawyer in its "warning" letter. The district court, at oral argument, entertained Mackey's contention that a distinction should be made between tort and contract claims, although it later rejected it. It was not, therefore, an abuse of discretion for the district court to deny Pioneer's motion for Rule 11 sanctions.

### E. *Attorneys' Fees*

Pioneer seeks an award of attorneys' fees and double costs on appeal, pursuant to 28 U.S.C. § 1912 (1982) and

Fed.R.App.P. 38. Awarding sanctions for frivolous appeals lies in the sound discretion of this court. An appeal is considered frivolous in this circuit when the result is obvious, *Jaeger v. Canadian Bank of Commerce*, 327 F.2d 743, 746 (9th Cir. 1964), or the appellant's arguments of error are wholly without merit, *Libby, McNeill, and Libby v. City Nat'l Bank*, 592 F.2d 504, 514 (9th Cir.1978); *see also McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir.1981).

Given the posture of this case, an appeal from summary judgment without the benefit of the district court's findings of fact and conclusions of law, it seems doubtful whether the result of this appeal would have been "obvious." Although Pioneer attempts to ascribe bad faith to Mackey, none is evident in the record. The parties will bear their own costs on this appeal.

CONCLUSION

The judgment of the district court is AFFIRMED.